## Case No. 7,142.

### JACKSON v. NORTHERN CENT. RY.

[Chase, 268; [1] 2 Int. Rev. Rec. 174.]

Circuit Court, D. Maryland. Nov. 24, 1865.[2]

---

[1] [Reported by Bradley T. Johnson, Esq., and here reprinted by permission.]

[2] [Affirmed in 7 Wall. (74 U. S.) 262.]

CHASE, Circuit Justice. The court has considered the questions argued yesterday upon the prayer of the counsel for the defendant in the case of John G. Jackson v. The Northern Central Railway Company, and I will now state our conclusions.

It is admitted that Jackson is a British subject resident in Ireland. He has brought suit against the Northern Central Railway Company, a corporation organized under the laws of Maryland and Pennsylvania, to recover the sum due on certain interest coupons, amounting to two thousand six hundred and fifty dollars, now due on the bonds of the company and belonging to him.

The company does not deny the plaintiff's title to the coupons or its own obligation to pay them, but claims that it is bound to deduct and withhold from him certain percentage to be paid into the treasury of the United States and Pennsylvania respectively, and that he can recover, therefore, only the amount of the coupons less these deductions. The counsel for the company prays the court to so instruct the jury. The plaintiff denies the right of the defendant to have these deductions made.

The deductions claimed are two: five per cent. on the amount of the coupons for the United States, and three mills on each dollar of the principal of the bonds for Pennsylvania.

The internal revenue act of congress, approved June 30, 1864 (section 116, 13 Stat. 281)[3], imposes on the income of every person residing in the United States, and of every citizen of the United States residing abroad, whether derived from interests, dividends, or other sources, a duty of five per cent. on the excess over six hundred dollars and not exceeding five thousand dollars; of seven and a half per cent. on the excess over five thousand and not exceeding ten thousand dollars; and ten per cent. on the excess over ten thousand dollars.

In the next section it is provided that in ascertaining the income of any person liable to an income tax, the amount received as dividends or interest from institutions whose officers, as required by law, withhold a percentage of their dividends on shares or interest on bonds, and pay the same over to an authorized officer of the government, as required by section 122, shall be included, and the amount so withheld shall be deducted from the tax assessed.

This section, it is clear, imposes no income tax whether derived from interest on bonds or from dividends on shares, or from any other source, except on citizens of or residents in the United States. It imposes, therefore, no income tax on the plaintiff, Jackson, who is neither such citizen nor resident.

It is clear also that congress regarded the duty on dividends directed to be withheld

[3] [Amended March 3, 1865 (13 Stat. 479).]

by the officers of the companies paying them, and to be paid over by them to the proper officers of the government, as an income tax to be paid only by citizens or residents of the United States.

The fact that congress regarded the duty on dividends in this light, materially aids in the construction of the 122nd section of the internal revenue act, which is mainly relied upon by the defendant. This section subjects all railroad, canal, turnpike, canal navigation or slack water companies, to a duty of five per cent. on all interests and dividends derived from their bonds or shares, and authorizes them to withhold that amount from the bondholders or shareholders, and makes payment to the government a discharge to that extent from payment to them. The language is general, and if the section stood alone an argument of some force might be drawn from it, that congress intended to impose an income tax on interest and dividends from such bonds and shares, without reference to the residence or citizenship of the holders. But the section does not stand alone. It must be considered in connection with other parts of the act; and the 116th section, as we have already observed, regards dividends and interests, subject to deduction by the officers of the companies paying them, as an income not taxable except when payable to citizens or residents.

It is impossible to ascribe to congress the intention of taxing citizens or subjects of foreign states in this indirect way. Sound principles of construction require us to regard this section as simply providing for the cheap and efficient collection of the tax on incomes derived from the bonds and shares of the companies described, and not at all as touching the number or classes of income tax payers. The interest and dividends on which the duty is thus collected must be regarded as the same interest and dividends on which a duty is imposed by the 116th section, and as subject to duty only when held by citizens or residents of the United States.

The defendant's prayer for instructions, therefore, must be denied so far as it asserts a right on the part of the railroad company to deduct five per cent. from the amount of interest coupons held by plaintiff for the purpose of paying the same into the treasury of the United States.

The defendant also claims by his prayer a right to deduct from amount of the coupons sued on three mills per dollar on the principal of each bond to which the coupons are annexed. Three mills per dollar on each bond is three dollars on each thousand dollar bond. The semi-annual interest due on each thousand dollar bond is thirty dollars. The claim, therefore, is to deduct three dollars from each thirty dollars of interest; or in other words ten per cent. of the whole amount of the interest coupons, to be paid into the treasury of Pennsylvania.

For support of this claim we have been referred to the 98th and 101st sections of the general tax law of Pennsylvania, as printed in Brightly's Digest (edition of 1858), and to the third section of a statute of the same state imposing additional taxes, approved April 30, 1864. We have had time for very little further search, and are not aware of any other statute which can be regarded as supporting the claim. We shall consider it, therefore, almost exclusively with reference to the provisions to which we have been referred.

The first of these, in section 98, p. 787, of Brightly, is a mere enumeration of the subjects of taxation in Pennsylvania. Among these are included "mortgages," "money owing by solvent debtors, whether by promissory note, penal or single bill, bond or judgment," and also "all public loans or stocks whatsoever, except those issued by the commonwealth." It is not easy to imagine that interest coupons are intended by either of these descriptions. They are certainly not "mortgages," nor "public loans," nor "stocks;" if they come under either description, it must be under that of "money owing by solvent debtors," and that they do not come under this is almost conclusively proved by its remaining words, namely, "by promissory note, penal or single bill, bond or judgment." These words irresistibly suggest the inference that it was the principal of the "money owing," and not the interest payable and paid from time to time, which was regarded as the subject of taxation.

And this inference is strengthened by the language of the second provision cited from the 101st section of the same law. The section specifies certain property to be assessed at certain rates for state purposes, and then adds the clause for the defendant, namely: "And on all other property taxable for state purposes three mills on every dollar of the value thereof." We think there is no reference here to the taxation of interest. Interest taxed as income is not aptly described as property taxed on the value thereof. Nor is it likely that so trifling a tax as three mills on the dollar, three tenths of one per cent. less than eight dollars on the amount of the interest coupons sued on, would be imposed as tax on interest considered as income. [And it was quite impossible, that any such tax should have been imposed on the principal of the debt of which twenty-six hundred and fifty dollars is a half year's interest, and directed to be collected by deduction from the interest. Such a tax would be as enormous as the tax on interest would be trifling, and would be unprecedented in the history of taxation.] [4]

The third provision cited for the defendant is from the third section of the act of 1864. It provides that the officers of incorporated companies paying interest on which, by the

laws of Pennsylvania, a tax is imposed, shall retain the amount of the tax and pay it over to the state treasurer.

We do not regard the two first provisions, cited by the defendant's counsel, as imposing a tax on the interest on the bonds issued by any company, and, therefore, are obliged to regard the citation from the act of 1864 as inapplicable. If no tax is imposed by the laws of Pennsylvania, on the interest due from a company, none can be retained. It was doubtless intended by the legislature that money due from solvent debtors and other property, should be entered upon the general list of property for taxation, and that the amount of the tax assessed should be ascertained and collected in the usual manner without the intervention or agency of the debtors.

There is indeed a statutory provision to which the act of 1864 is applicable, and to which doubtless it was intended to apply. The 105th section of the general tax law, found on page 780 of Brightly, imposes a tax on the interest accruing on the loans or stocks issued by corporations and guaranteed by the state; and this is a tax which might be properly enough collected by deduction and retention by the officers of the corporation; but it does not apply to the bonds of the defendant, for it is not claimed that they are guaranteed by the state.

It follows that we must overrule the prayer of the defendant. It is proper to add that we have seen nothing in the statutes of Pennsylvania which warrants the supposition that its legislature ever intended to tax bonds or the interest on bonds held by citizens of other states or the subjects of foreign powers.

These views relieve us from the necessity of considering the grave, if not difficult question, whether any one state can tax the interest on the whole bonds of a railroad company whose road lies in several states, and whose franchises are conferred by the acts of several states, and whose means to pay interest must be derived from the operation of its road in every state where it lies. It is certain that if one state can impose such a tax, and enforce its collection by deduction from interest, every other state in which the road is operated may do the same, and so the whole road may be taxed in every state where a part of it lies. We leave this question to be decided when it may become necessary.

The prayer of the defendant is overruled, and the following instruction is given to the jury: "If the jury shall find from the evidence that at the commencement of this suit, the plaintiff was the lawful holder of the coupons representing interest due on bonds of the defendant, held by him, and that the plaintiff when he purchased such bonds was a British subject and resident in Ireland, and that he now resides there, the plaintiff is entitled to receive the amount of such coupons without deduction."

---

[4] [From 2 Int. Rev. Rec. 174.]

The jury then rendered a verdict for the plaintiff for two thousand six hundred and fifty dollars, the amount claimed, he waiving his right of interest.